UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KAYLA HASTINGS,                              )
                                             )
        Plaintiff,                           )
                                             )
                                             )
v.                                           )    Case No. 4:19-CV-1661-SPM
                                             )
ANDREW M. SAUL,                              )
Commissioner of Social Security,             )
                                             )
                                             )
        Defendant.                           )

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final

decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner")

denying the application of Plaintiff Kayla Hastings ("Plaintiff") for child's insurance benefits

under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for supplemental security

income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The

parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C.

§ 636(c). (Doc. 8). Because the Court finds the decision denying benefits was supported by

substantial evidence, the Court will affirm the Commissioner's denial of Plaintiff's application.

I.     STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal

requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v.

Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir.

2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a

1

court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence'

to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is

less than a preponderance, but is enough that a reasonable mind would find it adequate to support

the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also*

*Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting

*Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the

court considers both evidence that supports that decision and evidence that detracts from that

decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es]

not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations

regarding the credibility of testimony, as long as those determinations are supported by good

reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894

(8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the ALJ's findings,

the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011)

(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005))

## II.    FACTUAL BACKGROUND

On March 15, 2018, Plaintiff testified at the hearing before the ALJ as follows. Plaintiff

has pain in the right side of her face, including in her ear and behind her ear. (Tr. 41). She has had

the pain for about five years. (Tr. 41). Plaintiff takes several pain medications, including

gabapentin and tramadol. (Tr. 45-46). The pain in Plaintiff's face is constant; it is somewhat

relieved by medications but always returns. (Tr. 47). She has gone to the emergency room several times because the pain has gotten worse. (Tr. 46). Plaintiff also occasionally has pain in her shoulders, neck, and back, but it is very rare. (Tr. 53).

Because of Plaintiff's pain, the school district sent her a homebound teacher for her sophomore, junior, and senior years. (Tr. 43). Her graduation was delayed. (Tr. 43). After high school, she completed several online junior college courses and one in-person class. (Tr. 43). Her in-person class was three hours long and required constant standing; by the time she was done, she was exhausted and could not keep up with her other classes. (Tr. 44).

Plaintiff also has depression and anxiety, for which she sees a psychiatrist and counselor and takes medication. (Tr. 49, 51-52). Her pain exacerbates her depression, and she has anxiety related to the fact that she cannot do anything about her pain and that when she wakes up during the day, she does not know how she will feel. (Tr. 49-51). Plaintiff previously engaged in cutting behavior; she has not done that in a long time but still feels like doing it. (Tr. 45, 50). Plaintiff has threatened to kill herself, but has not made any suicide attempts. (Tr. 44). Plaintiff has occasional nightmares and is on medication for that. (Tr. 52).

On a typical day, Plaintiff gets about four hours of sleep, gets up and makes cereal, stays up for up to two and a half hours, and goes back to lie down. (Tr. 42-43). She takes about two naps lasting two to three hours every day, and during those naps she "sort of" sleeps. (Tr. 55). During the hours she is up, she is mostly lying down, because it makes her feel better. (Tr. 56). Standing in one place increases Plaintiff's pain, and lying down is better. (Tr. 54, 56). She does not do most household chores, because doing them increases her pain. (Tr. 40-41). However, she does help take care of her sister's baby every morning, and she also feeds and takes care of her dog. (Tr. 45). Plaintiff also goes shopping; she does not do the family shopping, but goes just to get out of the

house for an hour or so. (Tr. 53-54). She spends most of her days watching YouTube and playing video games; video games were recommended by her therapist as a coping strategy for her depression. (Tr. 48).

Plaintiff can concentrate on something for about half an hour. (Tr. 52). She does not have trouble remembering things. (Tr. 52).

With regard to Plaintiff's medical treatment records, the Court accepts the facts as presented in the parties' respective statements of fact and responses. Briefly, the record shows that Plaintiff's diagnoses during the relevant time frame have included complex regional pain syndrome, idiopathic facial pain syndrome, temporal neuralgia, diabetes, celiac disease, and psoriasis. Plaintiff has consistently reported pain in the right side of her face that interferes with her ability to sleep and sometimes her ability to function; she  also sometimes has pain in her neck and arms, but that has resolved with medication. Plaintiff has consistently sought and received treatment for her pain, including medications, injections, and pain patches, but she is not a candidate for surgery. Plaintiff has also consistently seen a psychiatrist and counselor for depression and anxiety, and she has often reported that her mental issues are related to her pain and her worries about her pain.

On June 6, 2016, Sarah Shackleford, who worked with Plaintiff for three years as her homebound teacher, completed a Teacher Questionnaire. (Tr. 243-49). Ms. Shackleford stated, *inter alia*, that Plaintiff has frequent pain that prevents her from focusing on tasks for long periods of time; that she struggles to follow a set schedule due to her frequent pain; that the pain she experiences is random and debilitates her for long periods of time; that her ability to function depends on her facial pain syndrome and is "day by day as compared to her peers"; that on a good day Plaintiff could be successful in all areas of caring for herself but on a bad day (or bad part of

4

a day), Plaintiff could be in so much pain that her mother has to help her care for herself; that during homebound placement, Ms. Shackleford called her home daily to check if she was feeling up to school work; that at times Ms. Shackleford would not see her for a week or so, and she would have to make up the time later; and that she had an unusual degree of absenteeism. (Tr. 243, 247-49).

On June 20, 2016, state agency psychological consultant James W. Morgan reviewed Plaintiff's medical records and opined, *inter alia*,  that Plaintiff had the mental capacity to perform simple tasks on a sustained basis with limited public contact (Tr. 71); that she would have no significant limitations in the ability to maintain attention and concentration for extended periods; that she would have no significant limitations in the ability to  perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (Tr. 75); and that she would have no significant limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 76).

The Court will cite additional portions of the record as needed to address the parties' arguments.

### III.   PROCEDURAL BACKGROUND

Plaintiff was born on April 27, 1997. (Tr. 66). On April 7, 2016, Plaintiff filed a claim for child's insurance benefits under Title II of the Act and a claim for supplemental security income under Title XVI of the Act, alleging an inability to work due to persistent facial pain, diabetes, hypothyroidism, fibromyalgia, major depressive disorder, generalized anxiety disorder, high blood pressure, celiac disease, and ovarian disease; both claims were denied on June 20, 2106. (Tr. 92-103). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 104-06). The

ALJ held a hearing on March 15, 2018. (Tr. 33-60). On June 8, 2018, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 7-28). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, but on April 4, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## IV.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). To be entitled to child's insurance benefits on the earnings record of a parent, a claimant over the age of eighteen must have a disability that began before he or she turned 22 years old. *See* 42 U.S.C. § 402(d)]; 20 C.F.R. § 404.350(a)(5). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d

605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis

proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

## V.  THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not attained age 22 as of June 12, 2015 and that Plaintiff had not engaged in substantial gainful activity since June 12, 2015. (Tr. 12). The ALJ found that Plaintiff had the following severe impairments: complex regional pain syndrome, idiopathic facial pain syndrome, degenerative disc disease, obesity, major depressive disorder, and generalized anxiety disorder. (Tr. 12). The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 14). The ALJ found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, and can occasionally stoop, kneel, crouch, and crawl. She can have no exposure to temperature extremes, to unprotected heights, or to hazardous machinery. The claimant is limited to only simple, routine work tasks, with only occasional contact with the general public.

(Tr. 17). At Step Four, the ALJ found that Plaintiff had no past relevant work. (Tr. 27). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including such representative occupations as hand packer and production worker/assembler. (Tr. 27-28). Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from June 12, 2015, through the date of her decision. (Tr. 28).

## VI.    DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because the ALJ's conclusion that Plaintiff had the RFC to perform work eight hours a day, five days a week, on a day-in, day-out basis, in the competitive world of work, is not supported by substantial evidence.

As discussed above, a claimant's RFC is "the most a claimant can do despite her limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 416.945(a)(1). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). An RFC determination must be based on a claimant's ability to "perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Astrue*, 648 F.3d 605, 617 (8th Cir. 2011) (quoting *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007)). *See also* Social Security Ruling ("SSR") 96-8p, "Assessing Residual Functional Capacity in Initial Claims," 1996 WL 374184, at *1 (July 2, 1996) ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical

9

and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis; means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

"It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)). However, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

Here, the ALJ found that Plaintiff had the RFC to perform light work, with additional and environmental limitations, involving only simple, routine work tasks, with only occasional contact with the general public. (Tr. 17). Plaintiff argues that the RFC is not supported by substantial evidence that Plaintiff could perform the requirements of competitive work without having her pain and pain flare-ups result in impermissible levels of off-task behavior and absenteeism. As Plaintiff points out, the Vocational Expert testified that a hypothetical individual who was off-task ten percent of the day, away from the duty station and not performing work, would not be able to maintain employment. (Tr. 58). After careful review of the record, although it is a close question, the Court finds substantial evidence to support the ALJ's RFC determination.

Because Plaintiff's subjective complaints of pain are the principal basis for her disability claim, the Court begins with an analysis of whether the ALJ conducted a proper analysis of those complaints that is consistent with the relevant regulations.[1] In evaluating the intensity, persistence,

---

[1] Plaintiff does not expressly challenge the ALJ's analysis of her subjective complaints.

and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, "Evaluation of Symptoms in Disability Claims," 2017 WL 5180304, at *4 (Oct. 25, 2017).[2] In examining the record, the Commissioner must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence. *See Moore*, 572 F.3d at 524 (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), & *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). *See also* SSR 16-3p, 2017 WL 5180304, at *7-*8 (describing several of the above factors, as well as evidence of treatment other than medication that an individual receives); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (same).

Social Security Ruling 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he

---

[2] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2. This clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to be considered remain the same under the new ruling. *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929.

[or she] acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).

After review of the record, the Court finds that the ALJ conducted a proper assessment of Plaintiff's symptoms of pain, consistent with SSR 16-3p and the relevant regulations, and that her assessment is supported by substantial evidence. The ALJ expressly cited 20 C.F.R. §§ 404.1529 and 416.929, discussed the allegations in Plaintiff's function report and hearing testimony, and conducted an express analysis of Plaintiff's subjective complaints of pain. (Tr. 17-22). Moreover, the ALJ specifically addressed the issue raised by Plaintiff in her brief: "the extent to which [Plaintiff's] reported pain and other symptoms might reasonably cause her to miss days, be off-task at work, or otherwise disrupt her ability to sustain a competitive work schedule." (Tr. 22). In addressing that issue, the ALJ discussed several relevant factors.

First, the ALJ considered evidence inconsistent with Plaintiff's allegation that any kind of activity increased her pain. (Tr. 22). The ALJ correctly noted that Plaintiff's medical providers had regularly recommended therapeutic life changes, including regular exercise, to help Plaintiff's pain symptoms, and Plaintiff reported to her treatment providers that engaging in physical and other activities helped with her pain and mood. (Tr. 22, 383, 619). For example, she reported at various points during the relevant period that there were times when she could distract herself from pain by listening to music and boxing (Tr. 1079); that she felt "fantastic" and had learned new coping skills that allowed her to be completely immersed and distracted from what bothered her both mentally and physically (Tr. 1111); that she had plans to go to a pumpkin patch and to help her sister redecorate her bedroom, and she thought those activities would help distract her from worrying about her pain (Tr. 1142); that she had been having less pain since she had been walking,

even though it hurts when she first gets up (Tr. 452-53); that she was using walking as a coping skill when pain was not too intense (Tr. 766); that relaxation techniques helped her cope with pain, though it never really goes away (Tr. 770); that she was using school and homework to help redirect her mind from pain, which sometimes helped (Tr. 776); and that although she was still in a lot of pain, she had been doing really well, was getting out, was enjoying school, and was managing her stress better. (Tr. 670). This evidence undermines Plaintiff's allegation that activity increases her pain and provides some support for the ALJ's conclusion that she was capable of doing light work without worsening her pain.

Second, the ALJ considered evidence that Plaintiff's complaints of pain, including her facial pain, was partially relieved by medications. In October 2014, Plaintiff reported that she was on a new medication that had helped to decrease her pain (Tr. 1079); in May 2015, Plaintiff reported to her rheumatologist that "she feels all the meds are working" and that she was more active and shopping more (Tr. 398); later in May 2015, she reported that she found her current medications helpful, that when she stopped them, her pain got much worse, and that she was able to tolerate her pain more, though she only rarely had pain-free times (Tr. 569), and her neurologist noted, "I am happy that, with the help of the Pain Clinic, she has had some relief of her pain" (Tr. 572); in August 2015, Plaintiff reported that an injection had really helped with her neck and back pain (Tr. 442); in March 2016, a provider noted that Plaintiff had facial pain but that pain medication "does help relieve pain most of the time" (Tr. 427); in April 2016, Plaintiff reported that a nerve block had really helped (Tr. 648); in August 2016, Plaintiff reported that "her medications make her pain feel tolerable" (Tr. 898); in October 2016, she reported that Cymbalta helped the nerve pain in her face to some extent (Tr. 664); in May 2017, she reported that she had a pain doctor that she liked, that her diagnoses were managed well, and that although she was still

13

in a lot of pain, she was walking around and going shopping a lot. (Tr. 685, 688); and in November 2017, Plaintiff reported that she was doing well, that her sleep and concentration were fine, Cymbalta helped with her fibromyalgia, and that she was tolerating her medications well without side effects (Tr. 698). The ALJ reasonably considered all of this evidence of improvement with medication in assessing how limiting Plaintiff's pain would be. *See Hensley v. Colvin*, 829 F.3d 926, 933 (8th Cir. 2016) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)); *Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) (evidence that medication was effective in relieving symptoms supported ALJ's finding that complaints were not fully credible).

Third, the ALJ considered evidence of Plaintiff's daily activities. The Eighth Circuit has recognized that its cases "send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain." *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009). *Compare, e.g.*, *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain."), *with Reed v. Barnhart,* 399 F.3d 917, 923-24 (8th Cir. 2005) ("[T]his court has repeatedly observed that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.") (quotation marks omitted). However, Eighth Circuit cases generally suggest that it is proper for the ALJ to consider such daily activities in conjunction with other factors in evaluating subjective complaints. *See, e.g., Clevenger*, 567 F.3d at 976 (ALJ properly considered Plaintiff's ability to do laundry, wash dishes, change sheets, iron, prepare meals, drive, attend church, and visit friends and relatives in discounting her complaints of disabling pain); *Halverson v. Astrue*, 600 F.3d 922, 932-33 (8th Cir. 2010) (holding that the

14

ALJ properly considered daily activities in conjunction with other inconsistencies in the record in assessing the credibility of the plaintiff's complaints); *Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his complaints were not fully credible).

On the specific facts of this case, the Court finds that the ALJ properly considered Plaintiff's daily activities in conjunction with other factors in the record in assessing Plaintiff's complaints of pain. Plaintiff's activities included helping her sister take care of her baby every day; shopping; walking for exercise; boxing; lifting weights; camping; taking a vacation with her family; online dating, and playing video games. (Tr. 45, 48, 54, 398, 442, 453, 494, 507, 515, 616, 648, 668, 670, 688, 1079). These extensive activities undermine Plaintiff's allegations of disabling pain. Additionally, Plaintiff was able to complete several college courses at once, including an in-person art class requiring significant amounts of standing and multiple online courses. (Tr. 43-44, 660, 663, 766-783). The Eighth Circuit has previously found the ability to complete college courses, even on a part-time basis, to be a proper consideration in discounting subjective complaints of disabling pain and fatigue. *See Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000). The Court also notes that although Plaintiff decided not to return to college after her first two semesters, her pain was not the only reason for that decision: Plaintiff also reported to her counselor that her specific college might not be the best place for her; that she wanted to take time off to figure out what she wants to do; and that she was conflicted about not going back to school but wanted to help her sister with her pregnancy and baby. (Tr. 785-87).

Fourth, the ALJ reasonably considered that the objective evidence did not fully support Plaintiff's complaints of pain. (Tr. 19-21). As the ALJ correctly pointed out, Plaintiff's providers

typically noted tenderness in the right side of Plaintiff's face (Tr. 381, 390, 400, 875, 879, 883, 887, 890, 894, 900, 904, 940); sometimes noted tenderness in her neck, shoulders, and/or arms (Tr. 371, 381, 866, 875, 879, 887, 890, 940); and on one occasion noted a slowed gait and only three out of five strength in both shoulder abductors and biceps (Tr. 879). Otherwise, however, her neurological and musculoskeletal examinations were largely unremarkable, with findings of normal strength, gait, sensation, and range of motion (Tr. 477, 572, 576, 579, 618, 628, 747, 751, 758, 811-12, 833, 839, 863, 883, 887, 890, 900, 904, 936, 971, 1097-98); and unremarkable or normal findings on imaging of the face and neck (Tr. 548-49, 553-54, 556-67, 906-07). Additionally, Plaintiff was typically observed not to be in no acute or apparent distress. (Tr. 381, 390, 482, 486, 567, 571, 579, 583, 616, 618, 619, 742, 746, 754, 758, 811, 822, 845, 849, 857, 875, 879, 883, 887, 890, 894, 900, 904, 976, 983, 989, 1031). Plaintiff's providers also generally found that she had appropriate concentration and no memory deficits. (Tr. 470, 642, 689). The Court further notes that the record contains few, if any, of the symptoms and signs the Social Security Administration describes as occurring along with pain in Complex Regional Pain Syndrome, such as swelling, changes in skin color or texture, changes in sweating, skin temperature changes, abnormal pilomotor erection (gooseflesh), abnormal hair or nail growth, osteoporosis, or involuntary movement. *See* Social Security Ruling 03-2p, "Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome," 2003 WL 22814447, at *2 (Oct. 20, 2003). Although an ALJ may not reject a claimant's statements about the intensity and persistence of her symptoms "solely because the available objective medical evidence does not substantiate" those statements, the regulations recognize that objective medical evidence is "a useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those

16

symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). *See also Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain).

Plaintiff argues that the ALJ's reliance on normal examination findings and recommendations to exercise to discount Plaintiff's complaints was unsupported, because Plaintiff was diagnosed with fibromyalgia, which has no confirming diagnostic tests and which has exercise as a recommended treatment. However, the ALJ reasonably found that Plaintiff's fibromyalgia was not a medically determinable impairment at Step Two of the analysis, after considering the appropriate diagnostic criteria set forth in Social Security Ruling 12-2p. (Tr. 14). *See* SSR 12-2p, "Evaluation of Fibromyalgia," 2012 WL 3104869 (July 25, 2012). Plaintiff does not challenge that determination and does not argue that her fibromyalgia was a medically determinable impairment for purposes of the disability analysis. "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p, 1996 WL 362207, at *1. Because Plaintiff's fibromyalgia was not a medically determinable impairment, there was no error in the ALJ not assessing the extent to which Plaintiff's alleged symptoms were consistent with fibromyalgia.

Finally, the Court notes that the factors not expressly considered by the ALJ do not appear to weigh strongly one way or another in the analysis of her subjective complaints. Plaintiff has no work history, presumably because she was a high school and college student during much of the relevant period. There is no indication that any of Plaintiff's many doctors have imposed any functional restrictions on her, and none of them provided any opinion evidence. A review of

Plaintiff's medical records does not suggest that she reported frequent side effects from her medications. Thus, even if the ALJ did not expressly discuss each of the relevant factors, it is apparent that it did not affect her assessment of Plaintiff's pain.

The Court acknowledges that there is a good deal of evidence in the record that tends to support Plaintiff's complaints of disabling pain, including records showing that despite some improvement with treatment, Plaintiff consistently reported pain in the right side of her face (and sometimes her neck and shoulders) and sought treatment for the pain from multiple types of providers (including neurologists, rheumatologists, pain management doctors, emergency room physicians, and psychiatrists) (Tr. 359, 359, 379, 388, 398, 440, 446, 448, 457, 460, 465, 477, 479, 481, 483, 569-75, 576-77, 578-80, 581-84, 589, 614-15, 637, 647-44, 865, 873, 877-80, 885-87, 898, 933, 939, 954); records indicating that Plaintiff was treated with numerous medications and treatments for pain, including Cymbalta, amitriptyline, tolmetin, diclofenac, gabapentin, tramadol, baclofen, Toradol, trigger point injections, a nerve block, and a lidocaine patch (Tr. 369, 379, 383, 388, 393-94, 398, 449, 477, 479, 481, 483, 569-75, 576-77, 578-80, 581-84, 615, 625-27, 648, 875, 900, 943, 955); Plaintiff's reports to her counselor of frequent concerns about her pain and its significant effect on her life (Tr. 491-536, 764-91); and the Teacher Questionnaire completed by Ms. Shackleford, which the ALJ gave only partial weight because Ms. Shackleford was not a physician and because her opinion predated and was inconsistent with many of the relevant medical records. (Tr. 25-26, 243-49). However, it is clear from the ALJ's decision that she discussed and considered this evidence, and as discussed above, there was contrary evidence that was sufficient to support the ALJ's conclusion. Because the ALJ offered several good reasons for discounting Plaintiff's complaints of pain, and because those reasons are supported by substantial

evidence, the Court must defer to the ALJ's determination. *See, e.g., Renstrom*, 680 F.3d at 1067; *Gonzalez*, 465 F.3d at 894.

The Court also finds that the RFC assessment is supported by substantial evidence. As discussed above, it is Plaintiff's burden, not the ALJ's burden, to prove her RFC. As discussed at length above, although there was evidence in the record from which the ALJ might have found that Plaintiff's pain was so severe that it would cause her to have excessive absenteeism or to be off-task at least ten percent of the time if she were expected to work full time, there was also contrary evidence, including evidence that medication was partially effective in controlling Plaintiff's pain, evidence that Plaintiff's pain symptoms improved when she engaged in physical and social activities; evidence that objective findings did not fully substantiate Plaintiff's complaints of pain; and evidence that Plaintiff was able to engage in activities such as completing college courses, walking, boxing, camping, shopping, and vacationing that were inconsistent with her complaints of disabling pain. The RFC finding is also supported by the opinion of state agency psychological consultant James W. Morgan, which the ALJ gave "great weight." (Tr. 25). Dr. Morgan found that Plaintiff had the capacity to perform simple tasks on a sustained basis with limited public contact and would have no significant limitations in the ability to maintain attention and concentration for extended periods; to perform activities within a schedule, to maintain regular attendance; or to perform at a consistent pace. (Tr. 71, 75-76). Although Plaintiff is correct that the opinion of Dr. Morgan, standing alone, would not constitute substantial evidence, it was appropriate for the ALJ to consider the opinions of Dr. Morgan along with the rest of the medical and other evidence in determining the RFC. *See Casey v. Astrue*, 503 F.3d 687, 694 ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole.").

The Court finds that the above evidence constitutes substantial evidence, including medical evidence, to support the ALJ's determination that Plaintiff had the RFC to perform a limited range of light work, without additional limitations related to absenteeism and off-task behavior. As the ALJ recognized, the record makes it clear that Plaintiff experiences a significant amount of pain. However, that fact alone does not require a finding of disability. *See Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) ("While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability."). The Court acknowledges the ALJ could have reached a different conclusion with respect to Plaintiff's pain and the limiting effects of that pain on her RFC. However, the ALJ's decision lies within the "available zone of choice," and the Court may not disturb it merely because it might have reached a different conclusion. *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019). *See also Partee*, 638 F.3d at 863 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.").

## VI.   CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of September, 2020.